IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ANTWON MCCORKLE (D.O.B.: XX/XX/1975) FOR DNA SAMPLES | Case No. 3:21-mj-337 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Peter Carbonaro, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I submit this Affidavit in support of an Application for a Search Warrant to obtain buccal (cheek) saliva samples, more specifically described in **Attachment B**, from Antwon McCorkle (D.O.B.: XX/XX/1975) ("**MCCORKLE**"), who is more specifically described in **Attachment A**.[1]

2. I am a Detective with Charlotte-Mecklenburg Police Department ("CMPD") and have been since August 2007. I am also a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since June 2018. I am currently assigned to the ATF Charlotte Field Division Group 1, Violent Crimes Task Force. I am a graduate of the CMPD training academy. Other training classes and seminars I have attended include Basic Law Enforcement Training, Street Drug Enforcement, Use of Informants, Interviews

---

[1] On June 9, 2021, a U.S. magistrate judge for the Western District of North Carolina authorized a nearly identical search warrant application, but investigators were unable to locate **MCCORKLE** within the specified time frame to execute that warrant, and they returned it unexecuted.

and Interrogations, Surveillance and Intelligence Gathering, Basic Drug Investigation, Undercover Techniques and Survival, Roadside Criminal Interdiction, Physical Surveillance, Basic Criminal Investigations, Bulletproof Mind and Violent Criminal Apprehension Techniques.  I have participated in numerous complex investigations involving the illicit trafficking of narcotics and firearms.  In connection with my official ATF/CMPD duties, I investigate criminal violations of state and federal firearms and narcotics trafficking laws, including but not limited to violations of 18 U.S.C. §§ 922(g)(1) and 924(c), and 21 U.S.C. §§ 841 and 846.  I have been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of firearms related offenses, the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking.  I am familiar with and have participated in all the normal methods of investigation, including but not limited to visual surveillance, the general questioning of witnesses, and the use of informants and cooperating defendants.  I have been the affiant on numerous search warrants.

   3. Additionally, in my training and experience, I have learned that DNA can be found in blood, hair, and other bodily substances and that criminal offenders often leave their DNA at the scene of an offense or on items used in the commission of an offense.

   4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement

officers and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Warrant and does not set forth all my knowledge about this matter.

5. I seek this Warrant in connection with an ATF investigation into **MCCORKLE's** possible possession of a firearm while a felon, in violation of 18 U.S.C. § 922(g)(1). The purpose of this Warrant is to obtain known DNA standards from **MCCORKLE** for comparison to DNA evidence that may be recovered in the criminal investigation.

6. **MCCORKLE's** saliva samples will be taken by myself or another law enforcement officer using a Sterile Cotton Tipped Applicator or a Federal Convicted Offender Program Buccal Collection Kit. Based on my training and experience, I know this technique is one of the least intrusive methods for obtaining evidence from a person's body.

## Statement of Probable Cause

7. On February 4, 2020 at approximately 9:40 pm, CMPD Officer Ryan Tran-Thompson pulled his marked patrol car into the parking lot of the Family Dollar at 6212 The Plaza, Charlotte, North Carolina. He saw a white four-door 2006 Nissan Sentra with North Carolina license plate PHK-7922. The car was backed into a parking space in front of the Family Dollar. Officer Tran-Thompson saw two people in the Sentra: (1) a black man, subsequently identified as Antwon

McCorkle (D.O.B.: XX/XX/1975) ("**MCCORKLE**"), in the driver's seat; and (2) a black woman, subsequently identified as S.M., in the front passenger seat.

8. Officer Tran-Thompson noticed that **MCCORKLE** stared at him as he drove by. Shortly afterwards, **MCCORKLE** turned on the Sentra's lights and drove out of the Family Dollar parking lot. Officer Tran-Thompson saw that the Sentra's license plate light was not working properly and decided to traffic-stop it.

9. Officer Tran-Thompson got behind the Sentra and turned on his police lights and siren while it was stopped at a stop light at the intersection of The Plaza and Barrington Drive. The Sentra immediately made a left turn onto Barrington Drive. It rolled forward slowly, and Officer Tran-Thompson saw **MCCORKLE** lean down and reach towards the front passenger floorboard. **MCCORKLE** then sat back up straight and stopped the car. In Officer Tran-Thompson's training and experience, **MCCORKLE's** actions suggested that he had attempted to conceal something in advance of the impending encounter with police.

10. Officer Tran-Thompson walked to the Sentra's driver's door. He immediately saw an open Ice House beer can in a cupholder near the car's gearshift. He also saw a copper Chore Boy brillo in the driver's door handle next to **MCCORKLE**. In Officer Tran-Thompson's training and experience, drug users use such brillos to consume narcotics, such as in a crack pipe.

11. Officer Tran-Thompson asked **MCCORKLE** to get out of the car. He handcuffed **MCCORKLE** in front of his patrol car. Officer Tran-Thompson then

4

asked S.M. to get out of the car. CMPD Officer Cristian Cruz patted down **MCCORKLE** and found a large amount of cash in his pockets, wrapped in a rubber band. **MCCORKLE** initally gave Officer Cruz a false name. **MCCORKLE** later admitted his true identity to Officers Cruz and Tran-Thompson.

12. Officer Tran-Thompson searched the car. He found: (i) a small metallic rod with burn marks on the driver's floorboard, commonly used for packing crack pipes with brillo; (ii) a small plastic "corner baggie" beneath the driver's seat; (iii) several grocery bags in the front passenger floorboard containing items that appeared to have been bought from the Family Dollar; (iv) a Glock model 21 .45 caliber semiautomatic pistol loaded with 11 rounds of .45 caliber ammunition, in one of the grocery bags on the front passenger floorboard; and (v) a black plastic bag containing two digital scales with white powder residue, in the front passenger floorboard.

13. Officer Tran-Thompson read **MCCORKLE** his *Miranda* rights, and **MCCORKLE** agreed to speak. **MCCORKLE** stated that the car belonged to his friend, and that he (**MCCORKLE**) did not know what was in the car. Officer Tran-Thompson confronted **MCCORKLE** about the pistol and the drug paraphernalia he found in the car. **MCCORKLE** responded that he knew nothing about these items and they they must belong his friend, who **MCCORKLE** stated is a drug user.

14. Officer Tran-Thompson then read S.M. her *Miranda* rights. She stated that **MCCORKLE** gave her the pistol and told her to hide it in the bags between her

5

feet. When Officer Tran-Thompson asked her if her DNA would show up on the pistol, she stated that it would, because **MCCORKLE** had handed it to her to hide.

15. Officers arrested **MCCORKLE** for possessing a firearm while a felon, carrying a concealed weapon, and possessing drug paraphernalia. Officer Tran-Thompson also issued **MCCORKLE** citations for driving with a revoked license, having an open container in the car, and having a faulty license plate light.

16. Investigators subsequently swabbed the pistol for DNA.

17. Based on a review of **MCCORKLE's** criminal history, he has a prior federal felony conviction for conspiracy to distribute and possess with intent to distrube cocaine and cocaine base from the U.S. District Court for the Western District of North Carolina, in Case Number 3:99-cr-53, for which the Court sentenced him to 10 years in prison. He also has several prior state felony convictions, including two separate convictions for possessing a firearm while a felon. Per a records check by the North Carolina Governor's Clemency Office, **MCCORKLE's** right to possess a firearm has never been restored.

18. An ATF firearms expert has opined that the Glock model 21 .45 caliber semiautomatic pistol was not manufactured in North Carolina and therefore traveled in or affected interstate or foreign commerce prior to recovery in this investigation on February 4, 2020.

19. Investigators plan to execute this Warrant upon **MCCORKLE's** apprehension in the Western District of North Carolina.

# CONCLUSION

20.     Based on the above facts, I submit that probable cause exists to believe that buccal swabs of **MCCORKLE** will yield evidence of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  Accordingly, I respectfully request a Search Warrant for **MCCORKLE's** DNA, which will be obtained through buccal (cheek) swabs and submitted to a DNA analyst for comparison to any DNA recovered from the pistol or any other items swabbed for DNA in this investigation.

                                         */s/ Peter Carbonaro*
                                         Peter Carbonaro
                                         Task Force Officer, ATF

**Affidavit Reviewed by Assistant United States Attorney Taylor G. Stout**

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 20th day of December, 2021, at 5:28 PM.

Signed: December 20, 2021

_____
David C. Keesler
United States Magistrate Judge

## ATTACHMENT A

The person to be searched is described as follows:



**Antwon McCorkle**

DOB: XX/XX/1975

Black, Male

Warrant to be executed upon **McCorkle's** apprehension in the Western District of North Carolina.

# ATTACHMENT B

The evidence to be seized is as follows:

Saliva samples taken from Antwon McCorkle (D.O.B.: XX/XX/1975). The saliva samples will be collected using Sterile Cotton Tipped Applicators or Federal Convicted Offender Collection Kits. The tip of a cotton applicator will be placed into the subject's mouth and will be run along the subject's gum lines to collect as much saliva as necessary.